In re A. ANGELLE, INC., d/b/a
Lakeside Honda, Debtor.

American Honda Finance Corporation,
Plaintiff,

v.

A. Angelle, Inc., d/b/a Lakeside Honda,
Calcasieu Marine National Bank of
Lake Charles, Walter Umphrey, Jeff
Branick, and the Calcasieu Parish
School Board, Defendants.

Bankruptcy No. 96–20205.
Adversary No. 96–2011.

United States Bankruptcy Court,
W.D. Louisiana,
Lake Charles Division.

July 27, 1998.

Scott J. Scofield, Lake Charles, LA, for American Honda Finance Corporation.

A.J. Gray, III, Lake Charles, LA, David F. Waguespack, New Orleans, Patrick J. Johnson, Jr., New Orleans, LA, for Hibernia National Bank.

Wade N. Kelly, Lake Charles, LA, for Rudy O. Young, Trustee.

Glenn H. Steele, Jr., Beaumont, TX, for Walter Umphrey and Jeff Branick.

Stephen C. Polito, Lake Charles, LA, for Calcasieu Parish School Board.

## REASONS FOR DECISION

GERALD H. SCHIFF, Bankruptcy Judge.

A. Angelle, Inc., d/b/a Lakeside Honda ("Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code [1] on March 7, 1996 ("Petition Date"), and on that day an order for relief was duly entered. The Debtor remained in possession as no chapter 11 trustee was appointed. On July

---

1. Title 11, United States Code. Further references to the Bankruptcy Code herein shall be shown as "section ___."

15, 1996, however, the case was converted to a case under chapter 7. Rudy O. Young ("Trustee") is the duly appointed, qualified and acting chapter 7 trustee.

This adversary proceeding was instituted by American Honda Finance Corporation ("AHFC") against the Debtor, Hibernia National Bank (successor by merger to Calcasieu Marine National Bank of Lake Charles) ("Hibernia"), Walter Umphrey ("Umphrey"), Jeff Branick ("Branick"), and the Calcasieu Parish School Board ("School Board")[2], to determine the extent, validity and rank of multiple security interests held by AHFC and the non-debtor defendants.

The trial in this matter was held on August 11 and 12, 1997. Following the trial, the court took the matter under advisement. On January 12, 1998, this court entered its Reasons for Decision on the matter. The extensive facts of the case are fully set forth in the court's original Reasons for Decision and need not be repeated here. Following entry of a Judgment on February 4, 1998, Hibernia filed a Motion for New Trial and/or to Alter or Amend Judgment ("Motion for New Trial") raising numerous issues. The court ordered oral argument on the following three issues raised by the Motion for New Trial:

(1) Whether a writ of sequestration affecting the new car inventory constituted a legal impediment to a dation en paiement;

(2) Whether Glen Angelle had the requisite authority to execute the partial dation en paiement on behalf of the Debtor; and

(3) Whether the court should adjust the interest awards on the various portions of the Judgment.

Oral argument on the Motion for New Trial was held on May 28, 1998. After hearing from counsel, the court took the matter under advisement.

## I.

### Did the Issuance of the Writ of Sequestration with Respect to the New Car Inventory Constitute a Legal Impediment to a Dation En Paiement?

 Relying solely upon a comment to an article in the Louisiana Civil Code, Hibernia argues that the partial dation en paiement, which the court held had transferred ownership of the Debtor's new car inventory to Hibernia, was invalid since the new car inventory was the subject of a writ of sequestration issued by AHFC. Comment (b) to La. Civil Code art. 2656 provides that—

> ... no giving in payment is possible after a sequestration, since the owner of the thing sequestered cannot deliver possession of it to his creditor. *LeGardeur Intern, Inc. v. Ascension Const. Corp.*, 504 So.2d 587 (La. App. 4th Cir.1987).

On October 25, 1995, AHFC filed suit against the Debtor in the 14th Judicial District Court and thereafter obtained a writ of sequestration over the Debtor's movables that were AHFC's collateral—this included the Debtor's new vehicles. Although the sheriff did not actually take physical possession of the movables, AHFC paid for representatives of the sheriff to be on site at the Debtor's dealership pursuant to the writ. Transcript p. 486. However, following execution of the Subordination Agreement whereby AHFC agreed to subordinate its lien position in favor of Hibernia, AHFC no longer had the sheriff's representatives at the dealership. Transcript p. 486.

In January 1996, AHFC again directed the sheriff to seize all of the Debtor's movables; this time, however, AHFC specifically excluded the new car inventory from the requested seizure. AHFC Ex. 31. Shortly thereafter, the sheriff did in fact seize all of the movables except the new car inventory. The actions of AHFC are consistent with AHFC's position that following the execution of the Subordination Agreement, AHFC no longer held a first ranking security interest in the new cars and, accordingly, took no action regarding the new cars.

AHFC argues that the writ of sequestration was released as to the new cars following the execution of the Subordination Agreement. The court agrees. Although AHFC never took any steps to amend the

---

**2.** The School Board answered the complaint, stated that it was not a secured creditor and asked to be dismissed from the adversary proceeding.

actual writ of sequestration, the sequestration in fact had ended. There was no act of control over the new cars by AHFC. In fact, if AHFC had taken any acts of control over the new cars following the execution of the Subordination Agreement, Hibernia would likely have had a claim against AHFC for such action. The court believes that the sequestration ended when the representatives of the sheriff were released from the premises at the time of the execution of the Subordination Agreement. At that time, the sheriff no longer had possession of the new cars, either actual or constructive, and the Debtor thus had the legal ability to transfer the new car inventory to Hibernia by dation. *Deville v. Hayes*, 23 La. Ann. 550 (La.1871).

Hibernia argues that AHFC had constructive possession of the vehicles pursuant to the writ of sequestration because AHFC had the ability to control the vehicles. The court again disagrees with Hibernia's position. Following execution of the Subordination Agreement, the court believes that AHFC lost the ability to control the new vehicles; in fact, AHFC's course of conduct indicates that AHFC conceded that point. If AHFC had taken actions of control over the new car inventory at the time, the court believes that Hibernia would have protested such actions arguing that AHFC had no power to exercise such control based upon the execution of the Subordination Agreement—this certainly is a logical position to take since Hibernia had paid some $1.2 million to AHFC for the latter to subordinate its position to Hibernia on the Debtor's new cars.

The court finds that the Debtor had the ability to execute the partial dation and thereby transfer the new car inventory to Hibernia. Accordingly, the court finds that this argument is without merit.

## II.

***Did Glen Angelle Have the Requisite Corporate Authority to Execute the Partial Dation En Paiement on Behalf of the Debtor?***

■ Hibernia next takes the position that Glen Angelle lacked the authority to execute the partial dation on behalf of the Debtor.

This conclusion is based upon the following facts. On February 23, 1996, AHFC sent a letter to the Debtor advising that "all rights held by Glen as owner . . . are not vested in AHFC." Further, the letter provided that—

> any corporate decision requiring shareholder approval, such as mergers, sale of all or substantially all of the corporations's assets, amendment to articles of incorporation, etc., shall require notice to and approval of AHFC . . . .

Joint Exhibit 199, Deposition of Robert Hurt, Exhibit 21.

Hibernia contends that as a result of that letter, Glen Angelle no longer had authority to execute the partial dation without AHFC's approval which was not even requested.

In response to this argument, however, AHFC suggests that Hibernia lacks standing to challenge the dation on such grounds. The court agrees. The partial dation was prepared by Hibernia and was in authentic form. Pursuant to La. Civil Code art. 1835, an authentic act "constitutes full proof of the agreement it contains, as against the parties . . ." The partial dation contains a statement that Glen Angelle was the Debtor's "duly authorized President." As to the parties to the partial dation, namely, the Debtor and Hibernia, the document constitutes full proof of that statement. Hibernia cannot now challenge that statement.

Hibernia suggests, however, that such an interpretation would allow any unauthorized individual to bind an entity by simply executing a document in authentic form. This argument is a red herring. Article 1835 does not preclude nonparties from contesting the authentic act. If an individual executed a document on behalf of an entity without any authority, that entity would be able to challenge the act. However, the individual would not be able to challenge the act and neither would the other party to the act. In the present case, AHFC would have been able to challenge the authority of Glen Angelle, but neither Glen Angelle himself nor Hibernia may challenge his authority after the fact.

Accordingly, the court finds that Glen Angelle had the requisite authority to execute the partial dation, as such authority is set

forth in the authentic act. The time for Hibernia to inquire as to his corporate authority was prior to the execution of the document, not now.

### III.

### *Were the Interest Awards on the Various Portions of the Judgment in Error?*

■ Hibernia finally argues that the court was inconsistent in the interest awards on the various portions of the Judgment. The court agrees. With regard to the judgment in favor of AHFC against Hibernia, the court allowed interest from the date of the filing of the adversary proceeding. However, with regard to the judgment rendered in favor of the Trustee against AHFC, the court only allowed interest from the date of the judgment. The court believes that the interest awards must be consistent. Pursuant to 28 U.S.C. § 1961, interest is calculated from the date of the entry of the judgment. Accordingly, the Judgment entered on February 4, 1998, will be modified so as to provide as following in the second full paragraph of page five that:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that judgment is rendered herein in favor of AHFC and against Hibernia for the payments by the Debtor to Hibernia, resulting from the sale of the new car inventory sold by Debtor following the date of the Partial Dation, February 28, 1996, in the sum of $365,106.95, plus interest at the rate set forth in 28 U.S.C. § 1961, from the date of entry of this judgment;

### CONCLUSION

The court finds that Hibernia's argument with regard to the interest awards contained in the Judgment has merit. Accordingly, the Motion for New Trial is **GRANTED IN PART**. The court's Judgment will be modified as set forth above. However, in all other respects, the Motion for New Trial is **DENIED** and the court's Judgment shall remain. The court finds that all issues raised by the Motion for New Trial which have not been addressed herein were either addressed by the court in its original Reasons for Decision or are without merit.

A separate order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.